Argued October 27, 1969, reversed and remanded April 22, petition for review denied May 27, 1970

SHEEDY, *Appellant, v.* STALL ET UX, *Respondents.*

468 P2d 529

*Claud A. Ingram,* John Day, argued the cause and filed briefs for appellant.

*Robert D. Dayton,* John Day, argued the cause for respondent. With him on the brief was Roy Kilpatrick, John Day.

Before PERRY, Chief Justice,* and McALLISTER, SLOAN, O'CONNELL, GOODWIN,† and DENECKE, Justices.

DENECKE, J.

The issue is whether evidence was properly excluded because it was hearsay.

Plaintiff is a real estate broker and this action is to recover a commission. Pursuant to an oral agreement with the defendants he offered defendants' ranch

---

* Perry, C. J., did not participate in this decision.

† Goodwin, J., resigned December 19, 1969.

for sale.[1] Plaintiff secured the signatures of Mr. Matuna, as purchaser, and the defendants, as sellers, to an earnest money agreement dated and executed December 21, 1966. The agreement provided: "This earnest money receipt is subject to the buyer's approval of the new road alignment through Sec. 7, and to the buyer's attorney approving this earnest money receipt by 1/3/67."[2]

The plaintiff was asked whether Mr. Matuna secured the approval of the agreement by his attorney. Defendants' objection to this question was sustained. Plaintiff's offer of proof was that in a telephone conversation not in the defendants' presence the buyer told plaintiff that his attorney had approved, and he was ready to go ahead with the "deal." The trial court sitting without a jury held that there was no proof that the buyer's attorney approved the receipt, that such approval was necessary and found for defendants.

The correct application of the rule that hearsay evidence is not admissible is one of the most difficult tasks in the law. An examination of the reasoning behind the rule is probably the best basis for determining whether the evidence is admissible.

■ Hearsay evidence is excluded because of its untrustworthiness. The declarant's accuracy and veracity cannot be tested by cross-examination. *State v. Kendrick*, 239 Or 512, 515, 398 P2d 471 (1965). It is not the untrustworthiness of the testimony of the witness on the stand who is asked to testify to what the declarant said that causes the exclusion of hearsay testimony.

---

[1] No contention was made about the Statute of Frauds.

[2] The fulfillment of the condition, approval of the new road alignment, while not expressly waived, was not hotly contested. The trial court in its memorandum opinion did not state whether or not it found this condition fulfilled. There was evidence from which it could be found that it was fulfilled.

The credibility of the witness can be tested by cross-examination. The problem of the trustworthiness of the witness in the courtroom is the same whether the witness is testifying to another's conduct or to another's words. It is the untrustworthiness of the declarant's statement that causes hearsay testimony to be excluded.

■ For this reason, if a witness testifies to a statement made by a declarant and such evidence is not introduced to prove the truth of the content of the declarant's statement, such testimony is admissible because it is not hearsay.

For example, life insurance policies require a proof of death before benefits will be paid. In an action upon a life insurance policy the beneficiary may offer evidence of a statement by a physician that the decedent has died. This evidence is admissible for the purpose of proving that a proof of death has been made in compliance with the requirements of the insurance contract. The evidence is not admissible as proof that the decedent died. The evidence is not hearsay as to the question of whether the statement was made, but it is hearsay as to whether the decedent died. Cases cited in 6 Wigmore, Evidence (3d ed), 189, § 1770, n 5.

■ Where the out-of-court statement has relevancy both as evidence that the statement was made and also as evidence of the fact asserted in the statement, the problem is even more difficult. This does not render the statement inadmissible, but limits the use to which the statement can be put.

Wigmore states the proposition as follows: "Where the *utterance of specific words* is itself *a part of the details of the issue under the substantive law and the pleadings,* their utterance may be proved without vio-

lation of the Hearsay rule, because they are not offered to evidence the truth of the matter that may be asserted therein." 6 Wigmore, supra, § 1770, at 185.

McCormick writes: "The hearsay rule forbids evidence of assertions to prove the facts asserted in them. Manifestly, proof of utterances and writings may be made with an almost infinite variety of other purposes, not resting for their value upon the veracity of the out-of-court declarant and hence falling outside the hearsay classification." McCormick, Evidence, 463, § 228 (1954).

■ We have adopted the general principle that evidence of a third person's out-of-court statements is admissible "when the extra-judicial statement of a third person is not offered to prove the truth of the utterance, but only to show that the statement was made." *Marr v. Putnam*, 213 Or 17, 25, 321 P2d 1061 (1958).

*Marr v. Putnam*, supra, was a libel case in which plaintiffs were allowed to introduce evidence that shortly after the alleged libelous material was published third persons greeted them with "Hi, slicker" or "Hi, racketeer." This evidence was deemed relevant to show that the third persons interpreted the material in question as referring to plaintiffs, independent of the truth or accuracy of the statements.

In *Hutchison v. Semler*, 227 Or 437, 361 P2d 803, 362 P2d 704 (1961), whether the defendant had ordered the building managers to put in a window was in issue. Over the plaintiff's objections, the defendant was permitted to introduce into evidence a letter he wrote to the manager ordering installation of the window and two letters from the managers to defendant confirming the order. On appeal, it was held that the letters were

admissible to show that at the pertinent time the installation of the window was ordered, regardless of the truthfulness of the matter recited in the letters.

In the instant case we conclude that the relevancy of the statement of the prospective buyer, Mr. Matuna, did not depend upon the truth of the matter stated. Regardless of whether the buyer's attorney actually approved the earnest money receipt, the buyer's statement to the plaintiff broker that his attorney had approved would fulfill or waive the condition.

■■ This is predicated upon the plaintiff being the agent of the sellers, the defendants, and authorized to receive the prospective buyer's notification that the condition of the contract had been fulfilled. The evidence establishes this as the fact. The testimony was that all negotiations leading up to the execution of the earnest money receipt and thereafter were through plaintiff. This included plaintiff's conveying to Mr. Matuna the defendants' decision not to go ahead with the sale.⑨ The plaintiff being authorized to receive the notice from Matuna that his attorney approved, the legal effect is the same as if the declaration had been made to the defendants themselves.

■ In a suit by the seller or the realtor against Matuna to enforce the contract, Matuna would be allowed to deny that he made the statement. However, Matuna would not be permitted to testify that he made the statement, but that his attorney had not approved the contract. Similarly, if the issue had been whether or

---

⑨ Koepke Sayles & Co. v. Lustig, 155 Wash 70, 283 P 458 (1929), held that the agent of the seller of realty was not impliedly authorized by the buyer to receive notice that the seller had accepted the buyer's offer. It is implicit in the opinion that the broker handling the transaction for the seller is authorized by the seller to receive notice from the buyer that the buyer accepts the seller's offer.

not Matuna had accepted the seller's offer to sell, Matuna could not in a later suit admit that he had told Sheedy he accepted but also state that in fact he had not accepted. A manifestation of acceptance to the offeror or his agent forms the contract regardless of the intent of the acceptor. Restatement, Contracts § 20.

McCormick refers to declarations of this kind as "utterances proved as operative facts." McCormick, supra, 463. "Similarly proof of oral utterances by the parties in a contract suit constituting the offer and acceptance which brought the contract into being, are not evidence of assertions offered testimonially but rather of utterances—verbal conduct—to which the law attaches duties and liabilities." McCormick, supra, 464.

A decision from this court and other decisions hold admissible such testimony as Sheedy sought to give; however, the reasoning in support of these decisions is either not stated or is dubious.

In *Anderson v. Wallowa National Bank,* 100 Or 679, 198 P 560 (1921), the defendants appointed plaintiff as an agent to sell some land. The plaintiff alleged he produced a buyer, Morrow, who was ready, willing and able to buy the land for $32,500, but defendant would not sell until plaintiff's agency expired. Plaintiff sued for the commission he would have earned. Plaintiff's testimony of his conversation with Morrow about Morrow's buying the land was objected to as hearsay. The court held the testimony was admissible.

"* * * In determining the ultimate question of whether Morrow was ready, able and willing to buy at the time he came in contact with the directors of the bank, the weight to be given to his declarations to Anderson is for the jury to determine. The evidence was competent to go to the jury in the effort to establish the second of the two

alternatives mentioned, namely, to produce a purchaser who was ready, able and willing to buy. The jury should be instructed that this testimony is limited to that purpose, for it is incompetent to prove a binding contract upon which either the seller or the purchaser could sue the other. * * *." 100 Or at 694-695.

New York has a series of cases holding admissible testimony of conversations between a party and a prospective buyer who was not a party to the lawsuit. In *McNamara v. Gregory,* 211 NY 21, 105 NE 78 (1914), the testimony was held admissible to prove the broker had not produced a willing buyer:

"* * * Undoubtedly McTighe's [the prospective buyer] statements to some third party, entirely disconnected with the transaction, that he was or was not willing to buy the premises would have been hearsay and incompetent. But that is not by any means the present case. When McTighe in response to the appellant's questions indicated an unwillingness to make the necessary offer and notified the latter to let some one else have the premises his declarations were in the nature of actions and conduct which indicated his attitude and bore upon the question of whether he was, as claimed by respondents, desirous of purchasing the premises." 211 NY at 23-24.

*Melkon v. H. B. Kirk & Co.,* 232 App Div 134, 249 NYS 229 (1931), presents the converse; the conversation was held admissible to prove that the broker had procured a willing purchaser. The plaintiff went abroad to sell defendant's whiskey. Plaintiff's compensation was to be measured by the difference between $2.85 per gallon and whatever higher price he could secure. Plaintiff's testimony of conversations with a prospective buyer to the effect that the buyer

agreed to buy whiskey for $5 per gallon was rejected as hearsay. The court reversed, stating:

"So, too, in the case before us, we are of the opinion that the conversation excluded would be competent not only with respect to the work done by the plaintiff to show that he was the procuring cause of a sale, but also to show that in fact a sale had been made and that the purchaser was ready and willing to meet defendant's terms; and that as a matter of fact, by reason of such acceptance, there had been effected a meeting of the minds between him and the defendants as disclosed in the statements made by such purchaser to defendant's agent, the plaintiff herein." 232 App Div at 136.

Accord, *Kynast v. Dora Holding Corp.*, 21 App Div2d 865, 250 NYS 2d 1019 (1964).

The plaintiff's testimony of his conversation with Matuna is admissible. The credibility to be accorded such testimony is to be judged by the trier of fact.

Reversed and remanded.