Argued March 28, affirmed April 13, petition for rehearing
denied May 2, 1972

STATE OF OREGON, *Respondent, v.* WENDELL
MYRON DeLORME (No. C-70-11-0554-CR),
*Appellant.*
495 P2d 1208

*J. Marvin Kuhn,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*John H. Clough,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before Schwab, Chief Judge, and Foley and Fort, Judges.

FOLEY, J.

Defendant having waived trial by jury was convicted of rape by the court and received a 10-year sentence. He appeals asserting as his sole assignment of error that the court erred in permitting a witness to recount statements made to him by the complainant shortly after the alleged assault.

Evidence by the prosecutrix, corroborated by circumstantial evidence, was that defendant, a stranger to her, importuned her in the guise of loneliness to get in his car and ride with him to a parking area overlooking the city lights on Terwilliger Boulevard in Portland. There he parked. He then proceeded to make advances towards her. She attempted to get out of the car and tried to kick out the front window after the defendant continued making advances towards her. She said, "* * * he said, he'd hurt me, and I was really scared. * * *" She testified he thereupon had intercourse with her against her will. There is substantial evidence to support the trial court's finding of guilt as to the rape and we must affirm unless the evidence which is the subject of the assignment of error was improperly admitted.

Mr. John Lyman of 239 S. W. Whitaker Street testified that on the night of November 19, 1970, he heard somebody beating on his house and went to the front door to see if somebody was there. When Mr. Lyman opened the front door to check there was a girl in the bushes who was calling for help. Lyman thought she may have been lost because it was easy to do so on that trail and he walked up to the pathway to help her. As he approached, the girl grabbed onto him and, according to Lyman, she was in a state of hysteria. He put his arm around her and took her into the house

where he sat her down and tried to calm her. When asked if he had questioned her, Lyman said:

"I don't even recall that. She was so—the only way I could say, she was so in a state of frenzy that the moment that I—if I said anything to her, I don't remember. * * *"

After the girl was seated she proceeded to tell Lyman what had happened. According to Mr. Lyman he did not remember interrupting her story because she talked without stopping. The initial utterance, according to Lyman, continued for perhaps 10 minutes. Mr. Lyman testified:

"* * * [S]he told me that she had been downtown and that she had met a fellow and that he had invited her to his car, and that they took a ride up the hill and that they looked at the lights of the city. She sobbed and then she told me he had raped her. * * *"

Mr. Lyman then called the police.

It is the above statements made by the complainant to Mr. Lyman which the court allowed the witness Lyman to recount which defendant assigns as error.

Defendant's assertion is that since the narrative statement is hearsay, it is inadmissible and that it was not sufficiently contemporaneous to be admissible as an exception to the hearsay rule. The trial court found that the event occurred contemporaneously with the alleged attack; that the prosecutrix was hysterical; and that the utterances were the first words uttered to the witness Lyman aside from the cry for help from the hillside.

The rule in Oregon governing the admission

of excited utterances is set out in *State v. Kendrick,* 239 Or 512, 515-16, 398 P2d 471 (1965):

> "The ground for the exclusion of hearsay is that the opposing party has no opportunity to confront in court the person making the statement and test his veracity and accuracy by cross-examination.[○] * * * Therefore, in order to come within an exception to the rule such a statement must have been made under circumstances calculated to give some special trustworthiness to it.

> "Statements known as spontaneous exclamations fall within a generally recognized exception to the rule. In order to qualify under this exception, the following have to exist: (1) there must be some occurrence startling enough to produce nervous excitement and render the utterance spontaneous and unreflecting; (2) the utterance must be before there has been time to contrive and misrepresent and while reflective powers are yet in abeyance; (3) the utterance must relate to the circumstances of the startling occurrence preceding it. (See § 1750, Wigmore on Evidence, 3d ed.)"

*See also, Wright v. Swann,* 261 Or 440, 493 P2d 148 (1972), for an extended discussion of the excited utterance exception to the hearsay rule.

In the present case, we agree with the trial judge who found that the prosecutrix's statement to Mr. Lyman met the requirements of the exception to the hearsay rule and was properly admissible in evidence.

Affirmed.

---

○ In the present case the defendant was offered the opportunity by the court to recall and cross-examine the prosecutrix-declarant had he desired to do so.