392 A.2d 704

**COMMONWEALTH of Pennsylvania**

v.

**John R. McINTOSH, Appellant.**

Superior Court of Pennsylvania.

Submitted June 13, 1977.

Decided Oct. 20, 1978.

102

John W. Packel, Assistant Public Defender, and Benjamin Lerner, Defender, Philadelphia, for appellant.

Deborah E. Glass, Assistant District Attorney, and F. Emmett Fitzpatrick, District Attorney, Philadelphia, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

JACOBS, President Judge:

Appellant was charged with simple assault, aggravated assault, and recklessly endangering another person after he allegedly hit eighteen month old Donita Everett in the mouth with a shoe. We reverse the judgment of sentence and grant appellant a new trial.

The only witness at appellant's trial was Betty Jean Everett, Donita's mother and appellant's girlfriend. She had no personal knowledge concerning Donita's injury and could testify only to what her other children had told her. Despite the fact that her two oldest children testified at appellant's preliminary hearing and despite the trial court's urging, the Commonwealth declined to call the children to testify at trial. At the end of Ms. Everett's testimony, the Commonwealth rested; appellant produced no evidence in his behalf. The trial court then entered a verdict of guilty to recklessly endangering another person and aggravated

assault and sentenced appellant to a term of imprisonment of from two to five years.

Appellant raises a number of issues on this appeal.[1] We agree with him that the trial court erred in ruling that Ms. Everett's testimony was admissible under the res gestae exception to the hearsay rule; therefore, we do not reach the other issues.

 "A res gestae declaration may be defined as a spontaneous declaration by a person whose mind has been suddenly made subject to an over powering emotion caused by some unexpected and shocking occurrence, which that person has just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties." *Allen v. Mack,* 345 Pa. 407, 410, 28 A.2d 783, 784 (1942).

*Commonwealth v. Coleman,* 458 Pa. 112, 115–16, 326 A.2d 387, 388–89 (1974); *see also Commonwealth v. Cooley,* 465 Pa. 35, 40–41, 348 A.2d 103, 106 (1975). There are two elements essential to the res gestae exception: an occurrence or event "sufficiently startling to render normal reflective thought processes of an observer inoperative" and the declarant's statement rendered as a "spontaneous reaction to the occurrence or event and not [as] the result of reflective thought." McCormick, *Evidence* (2d ed., 1972), § 297, at 704. "No definite time limit, or distance from the site of the crime, has been fixed by the courts in determining what spontaneous utterances are admissible as part of the res gestae. Each case has been judged on its own facts and circumstances: [Citations omitted]." *Commonwealth v. Cheeks,* 423 Pa. 67, 70, 223 A.2d 291, 293 (1966); *see also Commonwealth v. Cooley,* 465 Pa. at 41–42, 348 A.2d at 107.

1. Appellant set forth six bases in support of his argument that the trial court erred in admitting the sole witness' hearsay testimony. He also argued that he was denied his Sixth Amendment right to confront the witnesses against him and that the trial court erred in attempting to shift to the appellant the burden of calling child witnesses to the witness stand.

Despite the fact that cases of this kind must be decided on their own facts, both the lower court and the Commonwealth relied heavily on our decision in *Commonwealth v. Nowalk*, 160 Pa.Super. 88, 50 A.2d 115 (1946). That case, however, is distinguishable from the one before us now.

In *Nowalk*, a three year old girl was sexually assaulted by her next door neighbor, an adult male. After the assault occurred, the child returned to her home where she informed the babysitter of what had happened. The child repeated her story throughout the afternoon, remaining nervous and excited. The child told her mother what had happened at approximately 8:30 that evening. The court found that this was the child's *earliest opportunity to speak with her mother* and allowed the mother's testimony as being within the res gestae exception to the hearsay rule. *Id.*, 160 Pa.Super. at 90–91, 50 A.2d at 116.

Here, the trial court, in reliance on *Commonwealth v. Nowalk*, held Ms. Everett's testimony admissible because the children made these statements at the *first opportunity they had to talk to their mother out of the presence of nonfamily members* —i. e. appellant and the police officers. N.T. 15; *see also* lower court opinion at 5. This constituted an improper extension of *Nowalk*.

As the Supreme Court noted in *Commonwealth v. Noble*, the res gestae exception is " 'a dangerous rule' " which should not be extended beyond spontaneous utterances caused by the exciting event. 371 Pa. 138, 144–45, 88 A.2d 760, 763 (1952). The res gestae rule is the same, whether applied to child or adult declarants—there must be a startling event and the declarant's statement must be a spontaneous reaction to the event. *Nowalk* did not create a new res gestae rule allowing admission of a child declarant's out of court statement regardless of when and under what conditions it was made so long as it was made to the child's parent at the child's first opportunity to be alone with the parent. To apply such a rule is to misapply *Nowalk* and the res gestae exception.

■ Here, we are concerned only with whether an exciting event occurred and with whether the children's statements to their mother were spontaneously uttered. Appellant's striking an eighteen month old baby in the mouth with a shoe would be an exciting occurrence to small children watching. We cannot find, however, that their statements to their mother were spontaneous utterances created by the startling event.

■ On the day of the incident, following an argument between appellant and Ms. Everett, Ms. Everett left her house and returned approximately fifteen minutes later with the police. N.T. 11. The police took appellant into the living room and Ms. Everett went upstairs with her children. N.T. 11–12. There was no testimony that appellant and the police argued, scuffled, or caused any other disturbance. Ms. Everett spent approximately six minutes alone with her four children. She noted that the baby had blood on her hand and diaper and that she had been undressed, yet none of the children mentioned that appellant had hit Donita. Furthermore, they did not answer their mother when she asked what had happened to Donita's clothes. N.T. 12–13.

The children and their mother then went downstairs where they witnessed a brief fight between appellant and Ms. Everett's mother, after which appellant fled. N.T. 14. After appellant's flight, the children spent ten minutes in a police car with their mother, grandmother, and two police officers. N.T. 21–23. Again, they said nothing about appellant's striking Donita. Not until the Everett family reached Ms. Everett's mother's house, and perhaps not until after Ms. Everett discovered Donita's injury and began to cry, did the children accuse appellant of striking the child. N.T. 15, 24–25. We do not find these statements to have been spontaneously uttered and directly related to the exciting event; nor can we " 'exclude the likelihood of [their] having emanated in whole or in part from [the children's] reflective faculties.' " *Commonwealth v. Coleman*, 458 Pa. at 116, 326 A.2d at 389 quoting from *Allen v. Mack*, 345 Pa. at 410, 28 A.2d at 784. The statements are not admissible as res gestae exceptions to the hearsay rule; they constitute hear-

say without exception and the trial court erred in ruling that they were admissible. Because this testimony was the sole evidence presented to support appellant's conviction, a new trial is warranted.

Judgment of sentence reversed and case remanded for a new trial.

SPAETH, J., files a concurring opinion.

WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.

SPAETH, Judge, concurring:

I should like to gallop off again, in search of a terminology that has at least some degree of clarity.

We should not distinguish, but should disapprove, *Commonwealth v. Nowalk*, 160 Pa.Super. 88, 50 A.2d 115 (1946). There is not, and should not be, an "earliest opportunity exception" to the hearsay rule. We should not refer to "the res gestae exception"; most especially we should not define "the res gestae exception" as limited to "spontaneous utterances caused by [an] exciting event." Majority Opinion at 705, 706. There is no "res gestae exception," that is, there is not unless, like Humpty Dumpty in *Through the Looking Glass*, you think it all right for words to mean what you say they mean.*

Sometimes those who say there is a "res gestae exception" refer to an utterance not hearsay at all, because not offered for its truth but for the fact of its utterance (this appears to have been the original meaning; *see* Wigmore, quoting Thayer, 6 Wigmore, Evidence § 1767 (Chadbourn rev. 1976)). Other times they refer, as does the majority here, to an utterance that although hearsay, is more accurately describ-

---

* "But 'glory' doesn't mean 'a nice knock-down argument,'" Alice objected.

"When *I* use a word," Humpty Dumpty said, in rather a scornful tone, "it means just what I choose it to mean—neither more nor less."

"The question is," said Alice, "whether you *can* make words mean so many different things."

ed by reference to one of four established, and distinct, exceptions, namely: declarations of present bodily conditions ("my head aches"); declarations of present mental state (sad to say, the typical case seems to be a husband who says, "I hate my wife", *see, e. g., Benwell v. Dean,* 249 Cal.App.2d 345, 57 Cal.Rptr. 394 (1967)); excited utterances ("Oh God . . . .. It wasn't your fault . . . .", said at the scene of an accident, *Wright v. Swann,* 261 Or. 440, 493 P.2d 148 (1972)); and *un* excited declarations of present sense impressions ("We'll find them somewhere on the road wrecked if they keep that rate of speed up", said by passenger in car being passed by another car, *Houston Oxygen Co. v. Davis,* 139 Tex. 1, 161 S.W.2d 474 (1942)). *And see Commonwealth v. Dugan,* 252 Pa.Super. 377, 381 A.2d 967 (1977) (concurring opinion).

This statement of the law has been explicitly approved by our Supreme Court in *Commonwealth v. Pronkoskie,* 477 Pa. 132, 383 A.2d 858 (1978). There, as here, the Commonwealth defended the admissibility of certain out-of-court utterances "on the theory that they qualify under the *res gestae* exception." 477 Pa. at 136, 383 A.2d at 860. The Court, quoting Morgan's characterization of "res gestae" as "a Latin phrase to serve as a substitute for reasoning," 477 Pa. at 137 n. 3, 383 A.2d at 860 n. 3, responded as follows:

As we have recognized, *"res gestae"* is actually a generic term encompassing four discrete exceptions to the hearsay rule: (1) declarations as to present bodily conditions; (2) declarations of present mental states and emotions; (3) excited utterances; and (4) declarations of present sense impressions. [The footnote quoting Morgan comes here.] *See Commonwealth v. Cooley,* 465 Pa. 35, 348 A.2d 103 (1975); McCormick, Evidence § 286 (2nd Ed. 1972). 477 Pa. at 136, 383 A.2d at 860.

If the Supreme Court can stop analyzing an evidence problem in terms of "the res gestae exception", I should think we could too.

"The question is," said Humpty Dumpty, "which is to be master—that's all."
*Through the Looking Glass,* chap. 6.

Having fumed and sputtered on this far, I only wish to add that I agree with the majority that Ms. Everett's testimony should not have been admitted. The children's utterances were not declarations of their bodily condition or mental state. They were not excited utterances within the meaning of the excited utterance exception. *See Commonwealth v. Pronkoski, supra,* 477 Pa. at 142, 383 A.2d at 863 (holding an utterance not "excited" because various factors "weigh[ed] against a conclusion that Tina [the declarant] was still laboring under the shock of the events to such a degree as to negate the possibility of reflective thought on her part before making the statement"). They were not unexcited declarations of present sense impressions. Finally, if one accepts the view that sometimes hearsay should be admitted even if it does not precisely fit within one of the established exceptions to the rule against hearsay, still, such admission will occur only when strong arguments can be made that the proferred hearsay is reliable and that sufficient necessity for its admission exists. 5 Wigmore, Evidence §§ 1421–1422 (Chadbourn rev. 1974). Such arguments cannot be made here, for, as the majority notes, the Commonwealth had other witnesses, who were called at the preliminary hearing but not at trial.

I therefore concur in the order reversing the judgment of sentence and remanding for a new trial.